# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

PETE KEFALAS,

                Petitioner,

v.

WILLIAM GITTERE,[1] et al.,

                Respondents.

Case No. 2:18-cv-01745-GMN-VCF

**ORDER**

Pete Kefalas is a Nevada prisoner who was convicted of conspiracy to commit robbery, robbery with the use of a deadly weapon, and burglary while in possession of a deadly weapon and is serving concurrent sentences of 24 to 60 months, 84 to 300 months, and 26 to 120 months. (ECF No. 7-14.) Kefalas filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, alleging various instances of prosecutorial misconduct: wrongly informing the jury that a witness would be testifying, eliciting hearsay evidence, and making inappropriate statements during closing arguments. (ECF No. 14.) This court denies the remaining grounds of Kefalas' habeas petition, denies him a certificate of appealability, and directs the clerk of the court to enter judgment accordingly.

---

[1] The state corrections department's inmate locator page states that Kefalas is currently incarcerated at Ely State Prison. The department's website reflects William Gittere is the warden for that facility. At the end of this order, the court directs the clerk to substitute Kefalas' current physical custodian, William Gittere, as a respondent for the prior respondent Warden Williams, pursuant to rule 25(d) of the Federal Rules of Civil Procedure.

## I.   BACKGROUND[2]

On July 6, 2015, Aaron Jerome was living in a Motel 6 in Clark County, Nevada with his girlfriend, Toi Minor. (ECF No. 7-2 at 51, 56.)  That day, around 3:00 a.m., Minor was sleeping while Jerome was sitting outside of their motel room smoking a cigarette. (*Id.* at 60.)  Jerome saw Ronald Howard, to whom he owed a small amount of money, and two other men, one of whom Jerome later identified as Kefalas, walking outside of the Motel 6. (*Id.* at 50–51, 61, 64, 81.)  The three men made their way to Jerome's motel room on the second floor, and Howard demanded Jerome pay his debt. (*Id.* at 66.)  Jerome went into his room to find something to give Howard in lieu of money. (*Id.*)  Jerome left the motel room door slightly cracked, and while he was looking through his personal property, the three men entered the room and started going through Jerome's belongings. (*Id.* at 66–68.)  Jerome and Minor told the men to stop, but Kefalas "pulled up his shirt to show [them] the butt of a pistol that was hanging in the front of his pants." (*Id.* at 69.)  Jerome then sat on the bed with Minor because he felt threatened. (*Id.* at 70.)  The three men eventually left with Jerome's belongings. (*Id.* at 71.)

Officer Ammon Peacock with the Las Vegas Metropolitan Police Department received a call on July 6, 2015, at 4:25 a.m. informing him about the robbery and that the suspects were seen headed to the Boulder Station Hotel and Casino. (ECF No. 7-2 at 10, 12–13.)  When Officer Peacock entered the casino, he saw "three officers had three individuals matching the description of the suspects given by the victim, . . . on the ground [with their arms out to their sides] at gunpoint." (*Id.* at 19.)  Officer Peacock identified the individuals as Kefalas, Howard, and Vincent

---

[2] The court makes no credibility findings or other factual findings regarding the truth or falsity of this summary of the evidence from the state court.  This court's summary is merely a backdrop to its consideration of the issues presented in the case.  Any absence of mention of a specific piece of evidence does not signify the court overlooked it in considering Kefalas' claims.

1   Eaton. (*Id.* at 20, 22–23.)  Officer Peacock recovered several items from Howard belonging to
2   Jerome: "a watch, some phone chargers, [and] a wallet." (*Id.* at 23.)  A black garbage bag was also
3   found "which was later searched and found to have multiple [clothing] items that belonged to the
4   victim." (*Id.* at 24.)  Kefalas, Howard, and Eaton were seen on surveillance footage at the Boulder
5   Station Hotel and Casino passing the black garbage bag back and forth. (*Id.* at 49.)  Officers found
6   an airsoft pistol in Kefalas' waistband. (*Id.* at 24–25.)

7        Kefalas testified he went to the Motel 6 on the night in question with Eaton, his girlfriend's
8   brother, and his girlfriend to visit his girlfriend's cousin. (ECF No. 7-6 at 29, 31–32, 49.)  Kefalas
9   saw Howard, who he knew "from the neighborhood," at the Motel 6, and after getting Howard
10  some food at a 7-Eleven, Kefalas went to his girlfriend's cousin's motel room while Eaton spoke
11  with Howard in the front of the motel and Kefalas' girlfriend went to the Boulder Station Hotel
12  and Casino to gamble. (*Id.* at 32–25, 53, 61.)  Kefalas' girlfriend's cousin was not in his room, and
13  as Kefalas returned to the front of the Motel 6, he saw Howard and Eaton speaking with Jerome,
14  a man he did not know, outside of Jerome's room on the second floor. (*Id.* at 35–38.)  Howard
15  asked Kefalas to join them, and Kefalas complied. (*Id.* at 38.)

16       Howard went into Jerome's room, and Jerome indicated for Eaton and Kefalas to come
17  inside as well "so [his] neighbors [would not] know what's going on." (*Id.*)  Eaton went inside,
18  but Kefalas stayed outside. (*Id.* at 39.)  Kefalas testified that he may have lifted his shirt to check
19  his cellular telephone, which was located on his right hip near his airsoft pistol, while he was
20  standing outside of the motel room, but he did not purposefully show the pistol to Jerome and
21  Minor. (*Id.* at 40, 65.)  Eaton left Jerome's room "carrying a bunch of stuff in his hands." (*Id.* at
22  41.)  After walking to the casino next door, Kefalas only held the black garbage bag—the contents
23  of which were unknown to him—briefly while Eaton used the restroom. (*Id.* at 44–46.)

A jury found Kefalas guilty of conspiracy to commit robbery, robbery with the use of a deadly weapon, and burglary while in possession of a deadly weapon. (ECF No. 7-8.) Kefalas appealed his judgment of conviction, and the Nevada Court of Appeals affirmed. (ECF No. 7-33.) Kefalas then sought habeas relief in Nevada state court, but the state district court denied Kefalas' petition. (ECF Nos. 7-37, 7-43.) Kefalas did not appeal. Kefalas filed his second amended federal habeas petition on December 27, 2019. (ECF No. 14.) This court dismissed ground one of the second amended petition. (ECF No. 17.) The respondents answered the second amended petition, and Kefalas replied. (ECF Nos. 27, 28.)

## II.     GOVERNING STANDARDS OF REVIEW

### A.     Antiterrorism and Effective Death Penalty Act ("AEDPA")

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v.*

4

*Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

B.   **Prosecutorial Misconduct**

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Brown v. Borg*, 951 F.2d 1011, 1017 (9th Cir. 1991) ("Improprieties in closing arguments can,

themselves, violate due process."). A court must judge the remarks "in the context in which they are made." *Boyde v. California*, 494 U.S. 370, 385 (1990). The fairness of a trial is measured "by considering, inter alia, (1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against the accused." *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005). "[P]rosecutorial misconduct[ ] warrant[s] relief only if [it] 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

**III.    DISCUSSION**

    **A.    Ground 2(1)**

In ground 2(1), Kefalas alleges that his Sixth Amendment right to a fair trial was violated because the state incorrectly made statements during voir dire and openings arguments that Minor would be testifying. (ECF No. 14 at 5.)

        **1.    Background information**

During voir dire, the prosecutor told the jury, "[y]ou may hear from the following witnesses during our case-in-chief, so listen carefully and see if you recognize any of these names. We will be calling Aaron Jerome, Toi Minor." (ECF No. 6-45 at 23.) Later, during opening statements, the prosecutor made the following comments: "[y]ou will hear from Toi Minor, she will tell you that she woke up, she didn't understand exactly what was going on, and so her and Mr. Jerome start trying to give some items to these folks but eventually they start doing their own self help." (ECF No. 6-46 at 8.) The prosecutor also commented, "[a]nd you will hear from both Mr. Jerome and Ms. Minor they in fact identify not only Mr. Kefalas but also Mr. Eaton and Mr. Howard." (*Id.* at 9.)

The next day, before the state's presentation of its case-in-chief, outside the presence of the jury, the prosecutor stated that although Jerome and Minor were subpoenaed and were in court the previous day, they were not present. (ECF No. 7-2 at 7.)  The prosecutor represented that Jerome and Minor had "maintained good contact with [the district attorney's] office throughout th[e] case." (*Id.*)  The prosecutors speculated that they may have had transportation issues but that the District Attorney's Office "ha[d] been very diligent at getting them a cab when they need to come to court." (*Id.*)

Jerome testified at the trial; Minor did not.

### 2. State court determination

In affirming Kefalas' judgment of conviction, the Nevada Court of Appeals held:

> A remark made by a prosecutor in an opening statement does not constitute misconduct if it is a reference to "evidence the prosecutor intends to offer which the prosecutor believes in *good faith will be available* and admissible." *Watters v. State*, 129 Nev. 886, 890, 313 P.3d 243, 247 (2013) (emphasis added) (quoting ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standard 3-5.5 (3d ed. 1993)). After the prosecutor made the remarks at issue, she represented to the district court that the non-testifying victim had failed to appear even though that person had been served with a subpoena. The prosecutor further represented that the non-testifying victim had "maintained good contact with [the District Attorney's Office] from the inception of the case up through . . . this trial," and that the individual had appeared at the courthouse on the previous day. Since Kefalas does not challenge these representations or otherwise demonstrate that the prosecutor's prior statements to the jury were not made in good faith, we conclude that he fails to demonstrate that the prosecutor engaged in improper conduct. *See Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008) (holding that "[w]hen considering claims of prosecutorial misconduct, . . . we must determine whether the prosecutor's conduct was improper").

(ECF No. 7-33 at 2–3 (internal footnote omitted).)

### 3. Conclusion

The controlling United States Supreme Court precedent is *Frazier v. Cupp*.  In *Frazier*, the prosecutor's opening statement paraphrased testimony he expected to elicit from a cooperating co-

7

defendant, but that co-defendant later declined to testify. 394 U.S. 731, 733–34 (1969). The Supreme Court noted that "[i]t may be that some remarks included in an opening or closing statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable." *Id.* at 736. However, the Supreme Court found no prosecutorial misconduct in *Frazier* warranting federal habeas relief. *Id.* at 736–37. The Supreme Court based this decision on the fact that the prosecutor's opening statement was "no more than an objective summary of evidence which the prosecutor reasonably expected to produce," explaining that "[c]ertainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given." *Id.* at 736; *see also United States v. Jones*, 592 F.2d 1038, 1043 (9th Cir. 1979) ("A prosecutor's misstatement of the evidence does not automatically call for reversal. Instead, the court will reverse only if there is a serious possibility of prejudice to the defendant.").

Like *Frazier*, the prosecutor's opening statement was an objective summary of the testimony it reasonably expected from Minor: that she woke up when the three men entered the motel room, she assisted Jerome in locating belongings to give the men, and she identified Kefalas during the "show up." (ECF No. 6-46 at 8–9.) This evidence was not especially crucial to the state's case, as it was duplicative of Jerome and Officer Peacock's testimonies. Further, like in *Frazier*, the jury was given a limiting instruction: "[s]tatements, arguments and opinions of counsel are not evidence in the case." (ECF No. 7-5 at 9.) Accordingly, the Nevada Court of Appeals' rejection of Kefalas' prosecutorial misconduct claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court. Kefalas is not entitled to federal habeas for ground 2(1).

B.   **Ground 2(2)**

In ground 2(2), Kefalas alleges that his Sixth Amendment right to a fair trial was violated because the state "elicit[ed] purported hearsay evidence about Minor." (ECF No. 14 at 5.)

1.   **Background information**

After Jerome testified that the three men entered his motel room, the state asked Jerome "[w]hat happened when you told them to stop?" (ECF No. 7-2 at 69.)  Jerome responded that "[o]nce [he] told them to stop then they . . . pretty much just ignored [him]. And then [Minor] told them to stop a few times too." (*Id.*)  The state then asked Jerome if they were "saying this very calmly . . . [or] yelling it?" (*Id.*)  Jerome responded that he was "staying pretty calm for the most part. It's [Minor] that [sic] was really getting aggravated and didn't know how to control her temper at the time and was just yelling at them." (*Id.*)

2.   **State court determination**

In affirming Kefalas' judgment of conviction, the Nevada Court of Appeals held:

> Kefalas also argues that one of the victims violated the hearsay rule by testifying that as Kefalas and his alleged accomplices ransacked the motel room, the non-testifying victim: (1) "told them to stop," (2) became very "aggravated," (3) was unable to "control her temper," and (4) began "yelling" at Kefalas and his purported accomplices. We conclude that the district court did not abuse its discretion in allowing the testimony because these were not "statements" subject to the hearsay rule. *See* NRS 51.045 (defining a "statement" as "[a]n oral or written *assertion*" or "[n]onverbal conduct of a person, if it is intended as *an assertion*" (emphasis added)). Moreover, even if these portions of the victim's testimony constituted hearsay, they most likely would have been admissible as excited utterances. *See* NRS 51.095 ("A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is not inadmissible under the hearsay rule.").

(ECF No. 7-33 at 3–6 (internal footnote omitted).)

### 3. Conclusion

It is misconduct for a prosecutor to intentionally elicit inadmissible testimony. *See, e.g., United States v. Sanchez*, 176 F.3d 1214, 1222 (9th Cir. 1999). And "[w]hen a defendant contends that a prosecutor's question rendered his trial fundamentally unfair, it is important 'as an initial matter to place th[e] remar[k] in context.'" *Green v. Miller*, 483 U.S. 756, 765–66 (1987) (alterations in original) (quoting *Darden*, 477 U.S. at 179). To "reach the level of prosecutorial misconduct," the prosecutor's question, "[o]n its face," must be "phrased to elicit improper hearsay evidence." *United States v. Sarkisian*, 197 F.3d 966, 988 (9th Cir. 1999); *see also United States v. Etsitty*, 130 F.3d 420, 424 (9th Cir. 1997) ("Nothing in the questioning or the answers given can be construed to reflect an intention by the prosecutor to mislead the jury.").

Jerome volunteered the fact that Minor told the men to stop; the prosecutor's question did not appear to seek that information. *See Sarkisian*, 197 F.3d at 988; *Etsitty*, 130 F.3d at 424. Moreover, the Nevada Court of Appeals reasonably concluded—pursuant to Nevada law—that Jerome's testimony about Minor's reaction to the men entering their motel room did not amount to hearsay or, alternatively, would have been admissible under the hearsay exception for excited utterances. Because the prosecution did not seek Minor's statement and Kefalas' hearsay argument lacks merit, his prosecutorial-misconduct claim based on the elicitation of that alleged hearsay evidence fails. *See Tan*, 413 F.3d at 1112 (explaining that "the first issue" in a prosecutorial misconduct claim is assessing "whether the prosecutor's remarks were improper"); *see, e.g., United States v. Chu*, 5 F.3d 1244, 1251 (9th Cir. 1993) (rejecting prosecutorial-misconduct claim premised on elicitation of hearsay testimony where hearsay argument was meritless). Therefore, the Nevada Court of Appeals' rejection of Kefalas' prosecutorial-misconduct claim was neither contrary to nor an unreasonable application of clearly established

law as determined by the United States Supreme Court. Kefalas is not entitled to federal habeas for ground 2(2).[3]

### C. Ground 2(3)

In ground 2(3), Kefalas alleges that his Sixth Amendment right to a fair trial was violated due to the state's improper comments about Minor. (ECF No. 14 at 5.) The state commented during its closing argument that the three men "ransack[ed] that room" and that "[Minor] even t[old] them to stop." (ECF No. 7-6 at 88.)

#### 1. State court determination

In affirming Kefalas' judgment of conviction, the Nevada Court of Appeals "reject[ed] Kefalas' claim that the prosecutor committed misconduct by stating during her closing argument that the non-testifying victim 't[old] them to stop.' *See Valdez*, 124 Nev. at 1188, 196 P.3d at 476." (ECF No. 7-33 at 5 n.3 (second alteration in original).) This rejection was based on the following reasoning: "even if [this] portion[ ] of the victim's testimony constituted hearsay, [it] most likely would have been admissible as [an] excited utterance[ ]. *See* NRS 51.095." (*Id.* at 5–6.)

---

[3] To the extent that Kefalas alleges that the state's elicitation of facts about Minor—an unavailable witness—violated his Confrontation Clause rights, the Nevada Court of Appeals' decision reasonably precludes the granting of relief. The Confrontation Clause bars "admission of testimonial *statements* of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004) (emphasis added). Here, the Nevada Court of Appeals reasonably determined that Jerome's testimony about Minor's reaction did not amount to statements. And even if her single statement that she told the men to stop violated Kefalas' Confrontation Clause rights, the error did not have a substantial and injurious effect in determining the jury's verdict because the state's evidence of guilt was certainly weighty. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993) (holding that habeas relief is proper only if an error by the state courts "had substantial and injurious effect or influence in determining the jury's verdict").

### 2. Conclusion

The Nevada Court of Appeals reasonably concluded that the prosecutor's statement did not amount to misconduct. As was discussed in ground 2(2), the Nevada Court of Appeals reasonably concluded—pursuant to Nevada law—that Jerome's testimony about Minor's statement to the men to stop was admissible under the hearsay exception for excited utterances. Because this evidence was admissible, the state did not commit prosecutorial misconduct by commenting on it during its closing argument. Moreover, the jury was instructed that "[s]tatements, arguments and opinions of counsel are not evidence in the case." (ECF No. 7-5 at 9.) Thus, the Nevada Court of Appeals' rejection of Kefalas' claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court. Kefalas is not entitled to federal habeas for ground 2(3).

### D. Ground 2(4)

In ground 2(4), Kefalas alleges that his Sixth Amendment right to a fair trial was violated because the state "elicit[ed] purported hearsay testimony from" Officer "Peacock who stated [he] faked a seizure."[4] (ECF No. 14 at 5.)

### 1. Background information

During Officer Peacock's testimony, the following colloquy occurred:

    Q.    Was there ever a point where a medical unit arrived on scene as well?
    A.    Yes, there was.
    Q.    How did that occur?

---

[4] Kefalas also alleges that his Sixth Amendment right to a fair trial was violated because the prosecutor committed misconduct by eliciting hearsay testimony from Officer Peacock regarding a statement he made during his arrest. (ECF No. 14 at 5.) That allegation is meritless. The prosecutor asked Officer Peacock what statement Kefalas made, and Officer Peacock responded, "he stated something to the effect of, [t]hat's fine, I'll beat it like I did all the last ones, all the prior cases." (ECF No. 7-2 at 32.) That is not hearsay, so the prosecutor did not commit misconduct by eliciting that testimony. *See* Nev. Rev. Stat. § 51.035(3)(a).

12

      A.     When Peter Kefalas was taken into custody, he began to shake. We were unsure if it was a seizure or what was happening. He was unresponsive. So we requested medical for him.
      Q.     And is that common if somebody has any sort of medical issue for you to call out a medical unit?
      A.     Yes.
      Q.     And did they in fact arrive?
      A.     Yes, they did.
      Q.     Are you aware of whether Mr. Kefalas was seen by a medical unit?
      A.     Yes, he was.
      Q.     And by "medical unit," what do you mean?
      A.     An ambulance that, yeah, the people in an ambulance as well as usually Clark County Fire shows up.
      Q.     Was there [sic] Kefalas ever transported in an ambulance?
      A.     No.
      Q.     Why is that?
      A.     Once they did whatever they do *they said that all his vitals appeared to be fine and they believed him to be faking*.

(ECF No. 7-2 at 31–32 (emphasis added).)

    **2.**     **State court determination**

In affirming Kefalas' judgment of conviction, the Nevada Court of Appeals held:

    Hearsay evidence is generally inadmissible. *See* NRS 51.065. For most purposes, hearsay is defined as "a statement offered in evidence to prove the truth of the matter asserted." *See* NRS 51.035. "We generally review a district court's decision to admit evidence for an abuse of discretion . . . ." *Hernandez v. State*, 124 Nev. 639, 646, 188 P.3d 1126, 1131 (2008). Further, "[a]ny hearsay errors are evaluated for harmless error." *Coleman v. State*, 130 Nev. 229, 243, 321 P.3d 901, 911 (2014). Kefalas contends that the State introduced the following inadmissible hearsay evidence: . . . another police officer testified that medical personnel told him that Kefalas was "faking" a seizure during his arrest.

    Even assuming that the admission of this evidence violated the hearsay rule, neither error would warrant reversal because the errors would be harmless. Here, the primary victim identified Kefalas and testified that Kefalas and his alleged accomplices pushed their way into the victims' motel room wherein they grabbed several possessions belonging to him. This victim also testified that after the non-testifying victim told Kefalas and his alleged accomplices to "stop," Kefalas lifted up his shirt to reveal the butt of a handgun.

    Furthermore, police officers located Kefalas and his alleged coconspirators nearby and together shortly after the report of the robbery. An officer testified that

      he later searched Kefalas and found an air soft pellet gun in Kefalas' waistband. Lastly, another officer testified that he arrested one of Kefalas' alleged accomplices and observed that this person was carrying a garbage bag, which Kefalas admits contained properly belonging to the victim who testified at trial. Given the strength of the evidence against Kefalas, we conclude that these purported violations of the hearsay rule were harmless. *See Dias v. State*, 95 Nev. 710, 712, 714–15, 601 P.2d 706, 707–09 (1979) (concluding that hearsay evidence identifying the defendant as the perpetrator was harmless because there was other direct and circumstantial evidence linking the defendant to the crimes in question); *United States v. Reed*, 724 F.2d 677, 679 (8th Cir. 1984) (concluding that hearsay evidence suggesting that the defendant misrepresented his name and age was harmless "when viewed in the context of the entire trial and the overwhelming evidence of . . . guilt").

(ECF No. 7-33 at 3–5.)

### 3. Conclusion

"[I]ncorporating inadmissible evidence into questioning can constitute prosecutorial misconduct." *United States v. Sine*, 493 F.3d 1021, 1032 n.8 (9th Cir. 2007); *see also United States v. Sanchez*, 176 F.3d 1214, 1222 (9th Cir. 1999) ("It is improper under the guise of artful [questioning] to tell the jury the substance of inadmissible evidence."). Even assuming *arguendo* that the prosecutor improperly questioned Officer Peacock about the paramedics' statements that Kefalas faked a seizure, the Nevada Court of Appeals reasonably denied Kefalas relief.

      The harmless-error standard applied by the Nevada Court of Appeals was the harmless-error standard for federal constitutional violations articulated in *Chapman v. California*, 386 U.S. 18 (1967). *See Coleman v. State*, 130 Nev. 229, 243, 321 P.3d 901, 911 (2014) (citing to *Chapman* for the standard applied). The applicable test for whether a federal constitutional error was harmless varies with the procedural posture of the case. *Davis v. Ayala*, 576 U.S. 257, 267 (2015). On a direct appeal, the standard from *Chapman* governs. Under *Chapman*, the burden is on the prosecution to prove beyond a reasonable doubt that the error did not contribute to the verdict, such that the reviewing court must be able to declare a belief that the error was harmless beyond a

reasonable doubt. 386 U.S. at 24.  Under *Chapman*, an error is not harmless if there is a reasonable possibility that the error might have contributed to the conviction. *Id.*  In contrast, on collateral review, such as in the present action, the standard from *Brecht v. Abrahamson*, 507 U.S. 619, (1993), instead controls.

Under *Brecht*, the record must demonstrate that the error resulted in actual prejudice. *E.g.*, *Ayala*, 576 U.S. at 267.  Federal habeas relief is appropriate under this standard only if the court has grave doubt whether the trial error had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* at 267–68.  *Brecht* requires more than *Chapman*'s reasonable possibility that the error might have contributed to the conviction, and the court instead must find that the defendant sustained actual prejudice from the error. *Id.* at 268.  Under AEDPA, a federal court may not overturn a state court harmless-error determination unless the state court applied the *Chapman* standard in an objectively unreasonable manner.  However, application of the *Brecht* standard subsumes the inquiry of whether the state court's application of the *Chapman* standard was objectively unreasonable. *See Ayala*, 567 U.S. at 268.  That is, if the record demonstrates that the error was not harmless under *Brecht*, the petitioner will have established that the state court's application of *Chapman* was objectively unreasonable under AEDPA's deferential standard of review. *See, e.g., Fry v. Pliler*, 551 U.S. 112, 119–20 (2007); *Hall v. Haws*, 861 F.3d 977, 992 (9th Cir. 2017).

In the present case, the Nevada Court of Appeals reasonably concluded that the record fails to demonstrate that Kefalas sustained actual prejudice as a result of the alleged error.  Jerome testified that Kefalas and his coconspirators entered his motel room uninvited and took his belongings.  When Jerome and Minor told the men to stop, Kefalas showed him an airsoft pistol. Kefalas and his coconspirators were apprehended a short time later in possession of Jerome's

belongings. *See* text, supra, at 2. Given these facts, this court cannot conclude that there was a reasonable probability that the jury would have arrived at a different verdict had Officer Peacock not testified about the paramedics' statements that Kefalas faked a seizure at the time of his arrest. Accordingly, because any error was harmless under the *Brecht* standard, the Nevada Court of Appeals' application of the *Chapman* harmless-error standard was neither contrary to nor an objectively unreasonable application of clearly established federal law. Kefalas is not entitled to federal habeas relief for ground 2(4).

  **E.**  **Ground 2(5)**

In ground 2(5), Kefalas alleges that his Sixth Amendment right to a fair trial was violated due to the cumulative effect of prosecutorial misconduct. (ECF No. 14 at 5.) In affirming Kefalas' judgment of conviction, the Nevada Court of Appeals held: "[s]ince we find no error, and the issue of guilt in this case is not close, we reject his cumulative error claim, notwithstanding the seriousness of his convictions." (ECF No. 7-33 at 6 n.3.)

Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); *see also Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must assess whether the aggregated errors "'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The only possible error that Kefalas has alleged is the prosecutor's elicitation of hearsay testimony from Officer Peacock regarding the paramedics' statements that Kefalas faked a seizure. Due to the lack of multiple errors, the Nevada Court of Appeals reasonably determined that there was nothing to cumulate. As such, the Nevada Court of Appeals' rejection of Kefalas' claim was

neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court or based on an unreasonable determination of the facts. Kefalas is not entitled to federal habeas for ground 2(5).[5]

## IV.     CERTIFICATE OF APPEALABILITY

This is a final order adverse to Kefalas. Rule 11 of the Rules Governing Section 2254 Cases requires this court issue or deny a certificate of appealability (COA). As such, this court has *sua sponte* evaluated the remaining claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Applying these standards, this court finds that a certificate of appealability is unwarranted.

---

[5] In his reply brief, Kefalas appears to assert a new ground for relief: the state suppressed evidence that Minor told the state that she had falsely identified Kefalas. (ECF No. 28 at 2 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). Kefalas also makes allegations in his reply brief that the state failed to obtain a copy of the surveillance video footage from the Motel 6 which would have shown that he "was nowhere around that room." (*Id.* at 4.) These belated arguments are not permitted, appear to be unexhausted, and are contradicted by Kefalas' testimony wherein he admitted being present during the robbery—although he denied entering the room or taking the victims' belongings. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("In order for the State to be properly advised of additional claims, they should be presented in an amended petition or . . . in a statement of additional grounds.").

## V. CONCLUSION

In accordance with the foregoing, **IT IS THEREFORE ORDERED**:

1. The petition (ECF No. 14) is DENIED.

2. A certificate of appealability is DENIED.

3. The clerk of the court is directed to substitute William Gittere for Respondent Warden Williams and enter judgment accordingly.

Dated: October 18, 2021

_____
Gloria M. Navarro, Judge
United States District Court